IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DONNA JO GIBSON, individually
and as natural parent and guardian
of J.G., a minor                                                           PLAINTIFF

v.                                                   CAUSE NO. 1:14CV319-LG-RHW

SMITHKLINE BEECHAM CORP.,
d/b/a GLAXOSMITHKLINE, LLC                                      DEFENDANT

ORDER GRANTING RENEWED MOTION
TO STRIKE PLAINTIFFS' EXPERT DR. AARON M. WOLFSON

BEFORE THE COURT is the Renewed Motion [105] to Strike Plaintiffs'

Expert Dr. Aaron M. Wolfson, filed by defendant Smithkline Beecham Corporation,

doing business as GlaxoSmithKline LLC (hereafter referred to as "GSK").  GSK

seeks to preclude admission or reliance on Dr. Wolfson's opinion testimony, because

his report is incomplete and based on unfounded speculation.  Plaintiff Donna Jo

Gibson, individually and as natural parent and guardian of minor J.G. ("Gibson"),

has responded, and GSK has replied.  After due consideration of the submissions

and the relevant law, it is the Court's opinion that Dr. Wolfson's opinion testimony

will not assist the jury.  Accordingly, the Motion will be granted and Dr. Wolfson's

testimony disallowed.

I.  BACKGROUND

In this case, the plaintiff claims that her son was injured by the drug Paxil,

which she took during her pregnancy.  She alleges that GSK, the manufacturer of

Paxil, knew that the drug could cause harm to unborn children whose mothers

ingested the drug during their pregnancy, but it "aggressively and actively

promoted Paxil for use in pregnant women." (Compl. at 3, ECF No. 1).

Plaintiff designated Dr. Aaron M. Wolfson as a vocational rehabilitation expert when she was first required to do so. GSK moved to strike the designation on July 7, 2015, asserting that Dr. Wolfson's opinions regarding J.G.'s future medical expenses and lost future wages were speculative and unsupported. [81]. The parties agreed that GSK's motion was moot when the Court extended plaintiff's expert designation deadline to allow Dr. Wolfson to incorporate information regarding J.G.'s upcoming medical procedures. [*See* Minute Entry Order, July 15, 2015]. Plaintiff's expert designation deadline was extended to December 1, 2015.

After that deadline passed, Plaintiff moved for another extension of the expert designation deadline to allow Dr. Wolfson to analyze documents that had recently been produced. [90]. After a telephonic hearing on the motion, the Court extended plaintiff's expert deadline to January 15, 2016. [Text Only Am. Scheduling Order, Jan. 5, 2016]. GSK now objects to introduction of Dr. Wolfson's expert opinions for two reasons. First, GSK asserts that Dr. Wolfson's report is preliminary and therefore incomplete. Second, GSK asserts that Dr. Wolfson's opinions regarding J.G.'s future medical expenses and lost future wages are speculative and unsupported.

## II.  DISCUSSION

### A.  Legal Standard

"Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be

determined by the court . . . ." Fed. R. Evid. 104(a).  "Before certifying an expert and admitting his testimony, a district court must ensure that the requirements of Federal Rule of Evidence 702 have been met." *Roman v. Western Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012) (citations omitted).  "The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the Rule 702 test." *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002) (citing *Bourjaily v. United States*, 483 U.S. 171, 173 (1987)).  Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods;
> >
> > and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Court functions as a gatekeeper to ensure that an expert is properly qualified and that his testimony is both reliable and relevant. *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999) (relying on *Daubert v. Merrell*

*Dow Pharm., Inc.*, 509 U.S. 579, 590-93 (1993)); *see United States v. McMillan*, 600 F.3d 434, 456 (5th Cir. 2010); *see also Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (citation omitted).  Expert testimony is relevant when it relates to any issue in the case.  *Daubert*, 509 U.S. at 591.  Reliability is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid."  *Id*. at 592-93.

"[T]he proponent of expert testimony . . . has the burden of showing that the testimony is reliable[] . . . and must establish the admissibility requirements by a preponderance of the evidence . . . ."  *Previto v. Ryobi N. Am., Inc.*, 766 F. Supp. 2d 759, 765 (S.D. Miss. 2010) (citations and internal marks omitted).  An expert opinion is deemed reliable if it is based upon sufficient facts and data, and it is the product of reliable principles and methods.  Fed. R. Evid. 702(b) and (c).  Otherwise, it constitutes "'unsupported speculation or subjective belief.'"  *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Daubert*, 509 U.S. at 590).

"The court should 'make certain that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"  *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 194 (5th Cir. 2006) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).  *Daubert* "provides an illustrative list of factors that may aid a court in evaluating reliability."  *Mathis*, 302 F.3d at 460.  These factors include:

> (1) whether the theory or technique has been tested;
> (2) whether the theory or technique has been subjected
> to peer review and publication; (3) the known or
> potential rate of error of the method used and the
> existence and maintenance of standards controlling
> the technique's operation; and (4) whether the theory
> or method has been generally accepted in the
> scientific community.

*Kumho*, 526 U.S. at 149-50 (citing *Daubert*, 509 U.S. at 592-94). "These factors are not mandatory or exclusive; the district court must decide whether the factors discussed in *Daubert* are appropriate, use them as a starting point, and then ascertain if other factors should be considered." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). "But the existence of sufficient facts and a reliable methodology is in all instances mandatory." *Id.* "[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Previto*, 766 F. Supp. 2d at 771 (quoting *Hathaway*, 507 F.3d at 318 (internal marks omitted)).

In addition to mandating the disclosure of the identities of witnesses a party may use to present expert testimony, Federal Rule of Civil Procedure 26(a) requires that:

> [T]his disclosure must be accompanied by a written report -
> prepared and signed by the witness - if the witness is one retained or
> specially employed to provide expert testimony in the case . . . .
> The report must contain:
>> (i)      a complete statement of all opinions the
>> witness will express and the basis and reasons for
>> them;
>> (ii)     the facts or data considered by the witness in
>> forming them;

> (iii)    any exhibits that will be used to
> summarize or support them;
> (iv)    the witness's qualifications, including a
> list  of all publications authored in the previous 10
> years;
> (v)    a list of all other cases in which, during the
> previous 4 years, the witness testified as an expert
> at trial or by deposition; and
> (vi)    a statement of the compensation to be paid
> for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).  "The purpose of supplementary disclosures is just that --

to supplement.  Such disclosures are not intended to provide an extension of the

expert designation and report production deadline." *Metro Ford Truck Sales*, *Inc. v.*

*Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998).

When a party discloses expert opinions after the deadline for disclosure, a

court may, in its discretion, exclude the opinions and the proposed testimony of the

expert.  *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir.

2004).

> Rule 16(b) of the Federal Rules of Civil Procedure authorizes the district
> court to control and expedite discovery through a scheduling order.
> Consistent with the authority vested in the trial court by [R]ule 16, our
> court gives the trial court "broad discretion to preserve the integrity and
> purpose of the pretrial order."

*Geiserman v. MacDonald*, 893 F.2d 787,790 (5th Cir. 1990) (citing *Hodges v. United*

*States*, 597 F.2d 1014, 1018 (5th Cir. 1979)).  To determine whether to exclude an

expert that was not properly designated, a court considers four factors:

> . . . (1) the explanation for the failure to identify the witness; (2) the
> importance of the testimony; (3) potential prejudice in allowing the
> testimony; and (4) the availability of a continuance to cure such prejudice.

*Hamburger,* 361 F.3d at 883-84 (citing *Geiserman*, 893 F.2d at 791).

B.    Sufficiency of Dr. Wolfson's Expert Report

Dr. Wolfson states that the plaintiff retained him to "provide a preliminary vocational rehabilitation assessment of [J.G.]."  (Dr. Wolfson Report, Def. Mem. Ex. A, ECF No. 106-1).  Dr. Wolfson stated that "[a]s we discussed, this initial preliminary assessment will require amendment pending the receipt of additional information that was not available prior to court-imposed discovery deadlines."  (*Id*.).  Both parties provided the same copy of Dr. Wolfson's expert report, dated May 26, 2015.  If Dr. Wolfson has supplemented or amended his report, it is not reflected in the record.

J.G. was born in 2005, and is now approximately eleven years old.  He has been treated for bilateral clubfoot since infancy.  J.G., who was in third grade at the time of Dr. Wolfson's report, has experienced difficulty in school.  He was held back in kindergarten, and tested below his grade level in second grade.  He has participated in the dyslexic therapy program at his school.[1]

Dr. Wolfson opined that "[g]iven J.G.'s documented academic difficulties, it is more likely than not that his formal education would terminate after high school graduation."  (*Id*. at 5).  He then assessed the impact of J.G.'s physical limitations on his ability to work, arriving at the conclusion that J.G. would be able to perform

_____

[1]  GSK notes factors in J.G.'s life which may positively affect his future academic performance, and the fact that J.G. made the honor roll after receiving therapy for his dyslexia.

sedentary to light/medium physical demand work that required no more than a high school degree. (*Id.* at 6). Dr. Wolfson did not assess the future medical costs associated with J.G.'s birth defects, citing the need to communicate with J.G.'s treating physicians regarding medical recommendations. (*Id.* at 7).

GSK argues that the opinions expressed in Dr. Wolfson's report are incomplete, speculative, based on insufficient information, and will not help the trier of fact to understand the evidence or determine a fact at issue.

The plaintiff agrees that Dr. Wolfson's report is an "initial assessment" of J.G.'s future medical costs, (Pl. Resp. Mem. 1, ECF No. 112), but asserts that the report will be supplemented as allowed by the Rules of Civil Procedure. J.G. has worn leg casts and leg braces since the summer of 2015, and a follow-up evaluation was scheduled for February 29, 2016. Plaintiff asserts that only after that evaluation will she know if J.G.'s doctors recommend surgery for J.G.'s condition. (*Id.* at 3).[2]

### 1. The Medical Cost Analysis

Dr. Wolfson's "cost analysis" is merely a statement that he cannot provide a medical costs analysis without more information. (*See id.* at 7). There is no opinion expressed. Since an initial disclosure of an expert report must be "complete and detailed," *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996), this disclosure is clearly inadequate. Supplemental disclosures

---

[2] Plaintiff's last expert disclosure deadline passed on January 15, 2016 without a request for any additional extension.

"are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Id.* Plaintiff proposes to deliver the entirety of Dr. Wolfson's opinion regarding J.G.'s future medical costs well after the disclosure deadline. This is improper "supplementation" under Fed. R. Civ. P. 26(a). As noted above, plaintiff's expert designation deadline has been extended twice to allow plaintiff to address this grave deficiency in Dr. Wolfson's report. As plaintiff has not been able to provide timely and adequate disclosure of Dr. Wolfson's future medical costs opinions, Dr. Wolfson will not be permitted to give future medical cost opinion testimony at trial. *See* L.U. Civ. R. 26(a)(2).

### 2. The Vocational Outlook Opinion

GSK contends that in determining J.G. was not likely to obtain an education beyond high school, Dr. Wolfson relied on inadequate information - a phone conversation with J.G.'s mother, review of J.G.'s school records into the third grade, and one medical visit report. GSK also complains that Dr. Wolfson provides no rationale linking J.G.'s educational difficulties in elementary school to Dr. Wolfson's conclusion that J.G. would not be capable of advancing beyond high school.

Plaintiff argues that Dr. Wolfson is well qualified as a vocational expert. Plaintiff contends that Dr. Wolfson took a methodical approach to the evidence, and his opinion is "based on J.G.'s 'documented academic difficulties', which according to Dr. Wolfson, render it 'more likely than not that his formal education would terminate after high school graduation.'" (Pl. Resp. Mem. 8, ECF No. 112).

In the Court's view, Dr. Wolfson's opinion regarding J.G.'s educational

prospects would not be helpful to the jury because he provides no basis for his opinion. Dr. Wolfson does not discuss whether his methodology for making this connection has been previously tested, whether it has been subjected to peer review and publication, what the potential rate of error may be, or whether it has been generally accepted in the relevant scientific community. There is no connection made between academic performance such as J.G.'s in the first few years of schooling and the stated probability of achieving no more than a high school education. Dr. Wolfson simply states that it is so. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Kumho*, 526 U.S. at 157 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). For this reason, Dr. Wolfson will not be permitted to give vocational outlook opinion testimony at trial.

III.  CONCLUSION

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Renewed Motion [105] to Strike Plaintiffs' Expert Dr. Aaron M. Wolfson, filed by defendant Smithkline Beecham Corporation, doing business as GlaxoSmithKline LLC, is **GRANTED**.

**SO ORDERED AND ADJUDGED** this the 17th day of March, 2016.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE

-10-